In the Matter of MARY A. HOMBURGER, Respondent, against THE VILLAGE OF SARANAC LAKE, Appellant, for Damages for Change of Grade.

In the Matter of GEORGE C. SAGEMAN, Appellant, against THE VILLAGE OF SARANAC LAKE, Respondent, for Damages for Change of Grade.

Third Department, May 6, 1925.

Villages — claim by property owners for damages arising out of change of grade of street in village of Saranac Lake — defense that claim was not filed within sixty days after change of grade was effected as required by Village Law, § 159 — grade as to one parcel was lowered four feet so that street was six feet below sidewalk — village assumed to grade sidewalk and driveway — time for filing claim did not commence to run until work was completed as to sidewalk as well as street proper — claim was filed in time as to that parcel — it is duty of village to grade sidewalks and driveways without demand — work on street was not completed until said work on sidewalks and driveways was finished — when definite time for completion not shown date of completion is question of fact — claim as to second parcel filed in time.

A claim for damages arising out of a change of grade of a street in the village of Saranac Lake made under section 159 of the Village Law on the ground that the change of the grade of the street injuriously affected a building or land adjacent thereto, or the use thereof, is filed within sixty days after the change of grade is effected, where it appears that the grade of the street proper was changed and the street paved under a contract; that the village assumed to change the grade of the sidewalk which as to one parcel involved was, when the grade of the street was changed, six feet above the street; that the claim for damages as to that parcel was filed within sixty days after the village had notified the claimant that it had completed the work on the sidewalk and driveway of her premises.

It is the duty of a village, where it changes the grade of a street, to change the grade of the sidewalks and driveways so as to permit of access to the street from

the adjacent property, and this duty should be performed without demand by the property owner.

As to the second parcel of land, although the owner did not demand that the village change the grade of the sidewalks and the driveways, and although the village did not change the grade thereof, the claim for damages as to that part was filed within the proper time, since it appears that it was filed within sixty days after the completion of the work on sidewalks in front of other premises.

Where no definite time for the completion of the work can be fixed, that date must be fixed as the time when it can reasonably be said that the whole improvement including the change of grade of the sidewalks and driveways is completed, and, under such circumstances, the date of completion is a question of fact.

APPEAL in the first above-entitled proceeding by the defendant, the Village of Saranac Lake, from an order of the Supreme Court, made at the Washington Special Term and entered in the office of the clerk of the county of Franklin on the 14th day of October, 1924, confirming the report of a referee and appointing commissioners to assess damages to the property of the petitioner.

Appeal in the second above-entitled proceeding by the petitioner, George C. Sageman, from an order of the Supreme Court, made at the Washington Special Term and entered in the office of the clerk of the county of Franklin on the 30th day of September, 1924, confirming the report of a referee and denying the application for commissioners to assess damages to the property of the petitioner.

*George J. Moore,* for the Village of Saranac Lake.

*Bryant & Lawrence* [*Frederick H. Bryant* of counsel], for both property owners.

McCANN, J.:

These two proceedings were instituted by separate petitioners to obtain damages by reason of the change of grade in Park avenue in the village of Saranac Lake. The two cases were tried together and argued together and as a matter of convenience are decided in one opinion. The petitioner in case No. 1 was the owner of two houses and lots and in case No. 2 of three lots all abutting on the easterly side of said street. These claims were presented under section 159 of the Village Law and they are resisted by the village of Saranac Lake on the ground that the petitioners' claims were not filed within the statutory time, which, under said section, is sixty days "after such change of grade is effected."

### CASE No. 1.

The appeal is from the order made at Special Term confirming the report of the referee appointed to take proof as to whether or not the petitioner was damaged; whether her claim was properly presented, and whether she was entitled to the appointment of commissioners to assess her damages. The above section provides:

" If a village has exclusive control and jurisdiction of a street or bridge therein, it may change the grade thereof. If such change of grade shall injuriously affect any building or land adjacent thereto, or the use thereof, the change of grade, to the extent of the damage resulting therefrom, shall be deemed the taking of such adjacent property for a public use. A person claiming damages from such change of grade must present to the board of trustees a verified claim therefor within sixty days after such change of grade is effected."

The only question to be determined under the language just quoted is, " When was such change of grade effected? " The only record evidence of any proceedings taken by the village board with reference to the change of grade is a resolution passed at a meeting of the board of trustees on June 20, 1922, which reads as follows:

*"Resolved:* That Park Avenue from the westerly terminus of the present macadam pavement westerly and northerly, to the northerly terminus of said Park Avenue, as now laid out, a distance of 1900 feet, be improved by the construction of macadam pavements. * * * That the total expense of said macadam pavements shall cost the sum of $24,000 including the expense of grading, curbing, storm sewers, catch basins, paving, engineer's fees and all contingencies." (It is assumed that other streets were included in the resolution.)

Pursuant to the provisions of this resolution a contract was entered into between the village board and the R. B. Kennedy Co., Inc., as contractors, by which the latter agreed to construct an asphalt pavement on said street according to plans and profile of the village engineer then on file in his office. The specifications attached provide for excavation, grading, construction of curbs, catch basins, storm sewers, etc. According to the testimony of the village engineer the work of these contractors was confined to the pavement lines and outside sufficiently to permit them to carry on the work. He also testified that they had nothing to do with the sidewalks. It does not appear that any other contract was made affecting the grade of this street or the construction of sidewalks or the grade of the land between the sidewalks and the curb. The street was fifty feet in width with a sidewalk on the easterly side within the street limits. Prior to any change of grade being made, the sidewalk in front of petitioner's premises was approximately two feet above the road level. In making the changes the roadbed was lowered about four feet in front of such premises so that the roadbed now is approximately six feet lower than the walk. The shoulders or embankment from the level of the sidewalk to the level of the macadam was left nearly perpendicular.

The Kennedy Company cut down the grade, laid the pavement and curb, and fixed the catch basins. This was all done under the supervision of the village authorities. The Kennedy Company also filled in the driveway between the curb line and the sidewalk in front of petitioner's premises. The filling was ashes and crushed stone, dirt, etc., and was only temporary, and reached only from the curb to the west edge of the walk.

On July 26, 1923, the village officials and the contractor inspected the Kennedy work and it was accepted and within a week thereafter the street was opened to traffic. No notice of this inspection or acceptance was made public, neither did the petitioner have any personal knowledge thereof. There is evidence that for some time after the street was opened for traffic there remained in the driveway curbing forms, timbers used for blasting and that piles of gravel and road material were piled in and along the roadway and for about two months after July 26, 1923, remained within the street limits. There is no finding by the referee with reference to these matters. The position taken by the respondent is that the work contemplated by the improvements along this street was not completed until in September; that the temporary driveway so made of loose stones and ashes placed by said contractor was not permanently improved; that during the months of July and August the petitioner had frequent conversations with the president of the village with reference to what was going to be done in reference to the grading of the property in front of her premises and that the president on each occasion asked her to " wait until the work is complete and you will be satisfied," and about the first of September the president stated to the petitioner that the village " would complete the work right away; " that within a day or two the village highway commissioner cut the sidewalk on petitioner's premises at her driveway two feet and constructed three steps on each side of the driveway so that the sidewalk where the driveway crosses is now two feet lower than the rest of the walk; that he also cut down about eighteen inches the grade of the shoulder of the highway from the west side of the sidewalk to the curb of the macadam and covered the same with concrete. In so doing the village removed all that part of the temporary driveway filled in by the Kennedy Company and rebuilt the same with concrete. Similar work was done by the village in front of premises adjoining the petitioner. All of this work was done in the month of September and finished about the third week of that month and under the direction of the village board. In the latter part of that month petitioner met the village officials at their request in front of her premises and inspected the work above described. The village

board, with one exception, also the village engineer, and the high-way commissioner were present. The petitioner was asked if she was satisfied with the way the work had been done and she stated that she was not and the president then stated to her that if she did not withdraw her claim, the village would not do anything more. (This evidently referred to a claim by the petitioner filed in December, 1922, after the work had been suspended in the fall of 1922.)

Was the date for filing petitioner's claim sixty days after July twenty-sixth or sixty days after the completion of the work by the village board as just related? The Village Law contemplates that damages may be allowed where the change of grade injuriously affects any land adjacent to the street whereon the grade is changed *or the use thereof.* The change of the grade by the village in this case must of necessity have contemplated the regrading, if necessary, of the sidewalks and the private driveways used as approaches to adjacent property. In this case no part of the general improvement plan was let by the contract except that of the construction of the asphalt pavement and the curb. The other matters were handled by the village board. The village does not contemplate that the mere lowering of the grade of a street is a damage to the adjacent property owners. It is the consequent and natural result thereof, which in this case had left the sidewalks and lot approximately six feet above the street without any means of access thereto.

The evidence shows that the Kennedy Company had no contract outside of the curb lines, and the placing of stones, etc., in this driveway as above mentioned was simply a temporary arrangement which it was not obligated to provide. Until the sidewalk was cared for and the approach made to the highway, the work was not completed; certainly not in so far as this petitioner was concerned. The petitioner was in no position to determine her damages until the work was completed. Had the village authorities left this driveway and embankment without any grading her damages would have been greater than they are now. Had they provided some other form of grading, possibly her damages would have been less. Furthermore, section 159 of the Village Law provides that in awarding the damages, allowance must be made for benefits, if any, derived by the claimant from such improvement. It would be impossible to determine what benefits would be derived by this petitioner until the improvements were finished and their nature determined. In fixing a time, therefore, when " such change of grade is effected " consideration must be had as to when it is effected not alone as the improvement of the street as a whole but as to the property of the individual who has a claim to present. In this case it was not

effected until this work was done, as shown by the work itself and as shown by the admissions of the president who requested the petitioner to wait until the work was completed. This conclusion is in accordance with the opinion in *Phipps* v. *Village of North Pelham* (61 App. Div. 442) and is in no way contrary to the holding in *Matter of Stillman* v. *Village of North Olean* (142 id. 300), cited by the appellant. It is said in the *Phipps* case that the work is not completed " until all has been accomplished which was in contemplation by the village." A further statement is " that the change of grade contemplated by the village * * * was not effective until all parts of the grade, *in so far as it affected the petitioner*, had been completed."

It is not necessary to discuss in this case the question of estoppel which is argued at length on each brief.

The order should be affirmed, with costs in favor of the respondent.

### CASE No. 2.

Upon the trial of this proceeding it was stipulated that the testimony taken in Case No. 1 might be considered as the evidence in this proceeding and that the referee be authorized to pass upon this case on the evidence taken in Case No. 1 with the same force and effect as though each witness had been separately sworn and examined herein. No further testimony was taken except that already referred to, other than the testimony of George C. Sageman who swore that the approximate grade of his sidewalk was eight or nine inches above the level of the highway before the pavement was laid and was three feet above after the change of the grade by the laying of the pavement. He further testified that since the construction of the work had ended on Park avenue, he had caused his sidewalk to be lowered about a foot so that there remained a drop of about two feet. He relies upon the same argument as that advanced by the petitioner Homburger except that he claims no estoppel. He urges that the fact that the village did work for Mrs. Homburger and also work on the adjoining premises is evidence that the work of the street as a whole was not completed. The village authorities never did any grading of the embankment or driveway in front of Sageman's premises, except that it appears that when the excavation was first commenced the Kennedy Company placed crushed stone in Sageman's driveway as a temporary arrangement, the same as it had in front of the property of Homburger. It is evident that the village intended to do no more work than was absolutely necessary and it is quite probable that no work was done in front of the Sageman property because no request or demand had been made for the same. There is no

reason why he was not entitled to the same consideration even though he did not make a formal demand therefor. The condition of his driveway, although showing a cut of only three feet, was apparent and the village should have treated this work as necessary the same as it did in front of the Homburger property. It is a fair conclusion to hold that the work upon this street was not completed until the driveways along the street were graded and the sidewalks put in the final condition in which the village intended to leave them. Under these circumstances that date would be the date of the completion of the work in front of the Homburger premises, because it does not appear that there was any improvement made subsequent thereto. The same rules of law apply to both cases. It is simply a question from what date the sixty days would have to be numbered. Where there is no general completion at a specified time of the entire improvement; when it cannot be said that the improvement was effected as to the whole street by some specific act, the property owner may serve his notice within sixty days after the work has been completed, in so far as it affects him (61 App. Div. 442, 447, *supra*), and in a case where no special work has been done to prevent damage to such property owner, the date should be fixed as the time when it can reasonably be said that the whole improvement was completed. This would be a question of fact in each case.

The following language in the *Phipps Case* (*supra*) is peculiarly applicable: "A property owner is not bound to know whether a public improvement, involving a scientific knowledge of grades, has been accomplished when the work is suspended, unless there are facts and circumstances which would bring notice to a man of ordinary intelligence."

This language is worthy of consideration in connection with the finding that for a considerable time after July twenty-sixth, piles of gravel and road material were piled in and along said road and remained there until some time during the fall of 1923.

Applying the rule above quoted to the petitioner Sageman it may be said that even under the claim of the village authorities that his sixty days commenced to run on July twenty-fifth, he had at least until September twenty-fifth to file his claim and if, during the meantime, work was being done on the Homburger property and the adjoining property, which was not completed until the third week of September, he had reason to believe that the public improvement had not been completed.

For these reasons and for those already stated in the Homburger case the order should be reversed, with costs in favor of the appellant; the claim allowed and commissioners appointed as provided in

section 159 of the Village Law to assess the damages sustained to petitioner's property.

All concur.

In the Homburger case, order unanimously affirmed, with costs.

In the Sageman case, order reversed on the law, with costs, and the matter remitted to the Special Term for an order appointing commissioners to assess damages sustained by the claimant.

The court makes the following additional findings of fact in the Sageman case:

Piles of gravel and road material were piled in and along said road and remained there until some time during the fall of 1923.

In the early part of September, 1923, the street commissioner cut the sidewalk down in front of the driveways of two of the residences along the easterly side of Park avenue and the shoulder of the highway in front of the two said driveways to the curb was graded down and covered with cement. In doing this work all or part of the driveways built by the Kennedy Company were rebuilt.

In the latter part of September, 1923, such work was inspected and accepted and no further work along said avenue has been done.

On the 30th day of October, 1923, the petitioner presented to the board of trustees of Saranac Lake a verified claim for damages suffered by him.

Said claim was made within sixty days after the completion of the work.

No agreement has been made with the petitioner as to the amount of damages to be allowed him, nor has any offer to settle or compromise said claim been made by said village, although more than thirty days elapsed after the presentation of said claim before the making of the application in this proceeding.